**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RUSSELL WILSON, JR.,                )   NO. EDCV 09-1765 SS
                                    )
                Plaintiff,          )
                                    )
        v.                          )
                                    )   **MEMORANDUM DECISION AND ORDER**
MICHAEL J. ASTRUE,                  )
Commissioner of the Social          )
Security Administration,            )
                                    )
                Defendant.          )
_____ )

**I.**

**INTRODUCTION**

Russell Wilson, Jr. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

\\

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on May 1, 2006, alleging disability since March 31, 2006. (Administrative Record "AR") 80-84).   Plaintiff's application was denied initially and upon reconsideration.   (AR 27-30, 34-38). Plaintiff requested and was granted a hearing before Administrative Law Judge ("ALJ") Thomas P. Tielens on April 27, 2009. (AR 10).   Claimant was represented by counsel and testified on his own behalf.   (AR 10). His mother, Josephine Wilson, also appeared and testified at the hearing.   (AR 10).   Additionally, Malcolm Brodzinsky, M.A., a witness for Plaintiff, testified at the hearing. (AR 10).   On May 12, 2009, the ALJ issued a decision denying benefits.   (AR 10-19).   Plaintiff then sought review of the ALJ's decision before the Appeals Council.   (AR 5-6).   On July 25, 2009, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became final.   (AR 1-3).   Plaintiff then filed the instant complaint on September 16, 2009.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on October 3, 1976 and was twenty-nine years old on the alleged disability onset date.   (AR 17, 80).   Plaintiff completed high school and has previous work experience as a truck driver, a construction worker and laborer.   (AR 17, 139).   Plaintiff alleges that his disability began on March 31, 2006.   (AR 10).   Plaintiff has not engaged in substantial gainful activity since his alleged onset of

disability, although he was incarcerated for portions of that time period. (AR 12, Supplemental Administrative Record ("SAR") 320-322).

The hearing before the ALJ was originally set for March 27, 2009. On that date, Plaintiff's attorney appeared and informed the ALJ that Plaintiff was incarcerated and was unable to appear. The ALJ continued the hearing so that he could obtain testimony from Plaintiff. (AR 22-23).

Plaintiff testified that he performs household chores such as vacuuming, cleaning up after a dog, recycling cans, and shopping. (SAR 324). Plaintiff takes care of his personal needs. (SAR 325). Plaintiff's mother testified that Plaintiff has a number of chores around the house, takes his medications at the proper dosage and time and bathes independently. A consultative psychiatrist reported that Plaintiff can eat, dress and bathe independently, do household chores, run errands, shop and cook. (AR 227). The ALJ found that Plaintiff had only moderate restrictions. (AR 14).

## A.   Plaintiff's Medical History

Plaintiff alleges a severe impairment of the inability to eat food due to an attempted suicide by drinking Drano. (AR 12). He was admitted to the hospital in May 2006 with a diagnosis of status-post Drano ingestion. (AR 56). The claimant underwent gastric bypass surgery twice after drinking the Drano. (AR 12). The medical record shows significant improvement within six months. (AR 12). By September

3

2006, Plaintiff's eating had improved.  (AR 12).  At the hearing, the only problem Plaintiff indicated was some weight loss.  (AR 12).

Additionally, Plaintiff alleges mental impairments.  (AR 13).  In May 2006, Gurmit Sekhon, M.D., reported his diagnostic impressions as schizoaffective disorder, depressed type, rule out schizophrenia, paranoid type, and other substance abuse on axis one.  (AR 162).  When admitted to the hospital in 2006, Plaintiff tested positive for amphetamines.  (AR 170).  He was discharged on April 19, 2006 with the diagnoses of major depressive disorder, recurrent, with psychotic features and amphetamine, marijuana, and alcohol abuse on axis one, with a global assessment of functioning ("GAF") of forty-five (serious symptoms).  (AR 158).  Plaintiff showed significant improvement on discharge (AR 159) and was reported as "doing well" and "maintaining weight" by December 2006.  (AR 259).  Plaintiff has a history of methamphetamine abuse.  (AR 227; SAR 332-335).

**B.    Consultative Evaluation**

In December 2006, Dr. Romeo Villar completed a medical source statement at the request of Plaintiff's attorney.  (AR 295-296).  Dr. Villar opined that Plaintiff would not be able to maintain forty hours of work per week on a sustained basis.  (AR 295-296).  However, Dr. Villar provided no explanations or evidence in support of his opinion. (AR 16).  By February 2007, Dr. Villar noted improvement and reported Plaintiff as stating "I'm doing well."  (AR 274-5).

\\

\\

4

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically-determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

---

[1]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

5

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

        The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the

claimant's residual functional capacity ("RFC"),[2] age, education and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## V.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 10-19).  At the first step, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since March 31, 2006, the alleged onset date.  (AR 12).  Next, he found that Plaintiff had the following severe impairments: schizoaffective disorder and substance addiction disorder (methamphetamine/speed abuse).  (Id.).  Plaintiff also alleged an impairment as a result of a gastrointestinal ("GI") problem created by his attempt at suicide by drinking Drano.  (AR 12).  However, the ALJ found that after Plaintiff's gastric bypass surgery, Plaintiff experienced significant improvement of this condition

---

[2]   Residual functional capacity is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record."  20 C.F.R. §§ 404.1545(a), 416.945(a).

7

and no impairment remained.  (Id.).  At the third step, the ALJ found that the severe impairments at step two did not meet or medically equal a listed impairment.  (Id. at 12-13).

At step four, the ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff is limited to simple, repetitive work and should avoid concentrated exposure to hazards like unprotected heights and dangerous machinery.  (AR 14).  The RFC assessment is supported by Plaintiff's psychological impairments, which impose limitations on his ability to concentrate and handle complex tasks and the limitation of avoidance of concentrated hazards (due to the side-effects of medications).  (AR 17).  However, the ALJ also found that Plaintiff was unable to perform his past relevant work.  (Id.).

Finally, at step five, and after consideration of the vocational expert's testimony, the ALJ concluded that based on Plaintiff's RFC, age, education and work experience, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (AR 18).  Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the decision.  (AR 18).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the

Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

## VII.

### DISCUSSION

Plaintiff contends the ALJ erred for a number of reasons. First, he claims that the ALJ erred at step two by finding the claimant's GI impairments nonsevere. (Plaintiff's Memo. at 7). Second, Plaintiff contends that the ALJ did not fulfill his duty to develop the record because he should have obtained "an updated opinion from a treating physician or a report of a consultative medical examiner." (Id. at 13). Third, Plaintiff asserts that the ALJ improperly relied on the opinions of Dr. Joel Ross, a non-examining state agency physician, and Dr. A.W.

1  Lizarraras, a non-examining state agency consultant. (Id. at 18).
2  Fourth, Plaintiff contends that the ALJ's RFC failed to include the
3  limitation that Plaintiff was limited to one-and-two-step instructions.
4  Finally, Plaintiff contends that the ALJ did not satisfy his duty to
5  develop the record because he did not update Plaintiff's medical records
6  for the hearing. (Plaintiff's Memo. at 18). For the reasons discussed
7  below, the Court disagrees with all of Plaintiff's contentions.

9  **A.   The ALJ Properly Found That Plaintiff's GI Impairments Were Not**
10 **Severe Because They Improved Within Six Months Following Surgery**

12 Plaintiff asserts that the medical evidence supports a finding that
13 Plaintiff's GI impairments were severe. (Plaintiff's Memo. at 12). In
14 support of his contention, Plaintiff summarizes the medical records
15 provided by Arrowhead Regional Medical Center. (Id.). Specifically,
16 Plaintiff argues that the ALJ should have considered the ten-pound
17 lifting limitation imposed on Plaintiff when he was discharged from the
18 hospital on September 22, 2006 after his stomach bypass surgery and that
19 it was error for the ALJ to find that Plaintiff could perform work at
20 all exertional levels and two jobs calling for medium exertion. This
21 Court disagrees.

23 **1.   Plaintiff's Impairment Was Not Severe Because It Did Not Last**
24 **Twelve Or More Months**

26 The ALJ properly considered the medical evidence in the context of
27 the rules and regulations governing social security claims. The
28 evaluation at step two is a de minimis test intended to weed out the

most minor of impairments.  See Bowen v. Yuckert, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(stating that the step two inquiry is a de minimis screening device to dispose of groundless claims and quoting Smolen, 80 F.3d at 1290).  An ALJ may find an impairment not severe "if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(the step-two inquiry is a de minimis screening device to dispose of groundless claims)(quoting Smolen v Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)).  "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687.

As a preliminary matter, in order for an impairment to qualify as severe, it must have lasted or must be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1509.  The evidence plainly shows that Plaintiff's condition improved within six months. Plaintiff was hospitalized in April 2006 after he ingested Drano while under the influence of amphetamines.  (AR 156-157, 170).  He underwent a series of procedures, including a gastric bypass in May 2006 (AR 182), a upper endoscopy in August 2006 (AR 224) and another gastric procedure in September 2006 (AR 269) due to the damage caused to his stomach by drinking Drano.  (AR 181, 185, 261).  This damage included weight loss. (AR 181, 185, 261).  Plaintiff also received followup care in September 2006.  By October 2006, Plaintiff was "doing well" (AR 260) and could eat, dress and bathe independently, perform some household chores and

errands, shop, cook, play video games and watch television. (AR 227-228). Plaintiff continued to improve. In December 2006, treatment notes report that Plaintiff was "doing well," "maintaining weight" and eating two full meals and snacks daily. (AR 259). Thus, Plaintiff has not demonstrated that his GI impairment lasted or was expected to last for at least twelve months.

### 2. The ALJ Was Not Required To Consider The Ten-Pound Limitation Because It Was a Post-Surgery Notation

Plaintiff underwent a surgical procedure on September 22, 2006 and was discharged the same day with instructions to avoid bathing until his wound healed, and to avoid heavy eating and heavy lifting. (AR 268). The instruction to avoid heavy lifting was a post-surgical notation, not a finding regarding a lasting condition or limitation. (Memorandum in Support of Defendant's Answer ("Answer") at 4, citing Regulation Section 404.1513(b) (defining medical reports), 20 C.F.R. § 404.1513(b) (2009), 20 C.F.R. § 404.1513(a)(2)(2009), 20 C.F.R. 404.15(a)(2) (2009), 20 C.F.R. 404.1513(b)(2009)). Thus, the ALJ was not required to consider the ten-pound lifting limitation in assessing Plaintiff's RFC.

### 3. Even Assuming The ALJ Erred In Disregarding The Ten-Pound Limitation, This Would Be Harmless Error

Even if the ALJ had accorded greater weight to the post-surgery notation restricting heavy lifting, the result would be the same. Had the ALJ found Plaintiff's lifting restriction to persist because of the

GI surgery, it would only reduce Plaintiff's RFC to medium work[3] or add a limited restriction.  Accordingly, any error in failing to consider the ten-pound limitation was harmless because the outcome would have been the same.  See Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that an ALJ's error in a Social Security benefits hearing is harmless where it does not change the outcome of the benefits determination); Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability).  No remand is required.

**B.    The ALJ Was Not Required To Obtain An Opinion From An Examining Physician In Order To Fulfill His Duty To Fully And Fairly Develop The Record**

Plaintiff argues that the ALJ should have obtained an updated opinion from a treating physician or a consultative internal medicine examiner.  (Plaintiff's Memo. at 13-14).  This contention is without merit.  Plaintiff contends that the ALJ erred by relying "only on the 2006 opinion of a non-examining state agency physician" and should have obtained an examining physician's opinion pursuant to 20 C.F.R. § 404.1519a(b) (consultative examination may be obtained if indication of changed condition likely to affect ability to work).  This Court disagrees.

---

[3]  Medium work, as defined in 20 C.F.R. 404.1567(c) and 416.967(c), permits lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and walking with normal breaks for 6 hours out of an 8 hour day, and sitting with normal breaks for 6 hours out of an 8 hour day.

Plaintiff's argument does not accurately reflect the requirements of 20 C.F.R. § 404.1519a(b). The regulation states that before ordering a consultative examination, the Commissioner will consider a number of factors, including the existing medical evidence, interview forms and claimant's allegations. The ALJ has broad latitude in ordering a consultative examination. Reed v. Masanari, 270 F.3d 838, 842 (9th Cir. 2001). Furthermore, the Commissioner need only seek additional evidence or clarification from a treating physician when a medical report contains a "conflict" or an "ambiguity" that must be resolved. 20 C.F.R. § 416.912(e)(1).

Here, there were no conflicts or ambiguity that had to be resolved, nor did the ALJ make such a finding. Therefore, the ALJ's duty to develop the record was not triggered. See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (duty not triggered where the ALJ did not make a finding that the medical report was inadequate to make a disability determination); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (only ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry or gather additional information). As indicated, the evidence clearly showed that Plaintiff showed improvement in his symptoms by December 2006. The record was more than adequate to allow for the ALJ's evaluation.

Additionally, the ALJ did not "consider [Plaintiff's] physical impairments based only on the 2006 opinion of a non-examining state agency physician," as Plaintiff contends. To the contrary, the ALJ

14

considered numerous medical records from several sources and incorporated many into his decision, including:

(1)  The records and opinion of state agency psychological consultant H.M. Skopec, M.D. in assessing Plaintiff's moderate restriction in activities of daily living, mild difficulties in maintaining social function, moderate difficulties in maintaining concentration, persistence or pace and one or two episodes of decompensation.  (AR 13, 16-17 citing 231-244).  The ALJ considered and accorded "[g]reat weight" to Dr. Skopec's opinion.

(2)  The psychiatric evaluations of Jason H. Yang, M.D. in determining Plaintiff's activities of daily living and social functioning. (AR 13, 16-17, citing AR 226-229).

(3)  The opinion of Romeo Villar, M.D., who completed a medical source statement at the request of Plaintiff's attorney, in concluding that Plaintiff was moderately limited in regards to concentration. (AR 13, 16-17, citing AR 295-296).

(4)  The reports of various doctors who observed Plaintiff when he was admitted to the hospital in May 2006 with a diagnosis of status-post Drano ingestion (AR 15, citing AR 155-180) and again in December 2006 when Plaintiff was reported as "doing well, maintaining weight."  (AR 16, citing AR 258-272).

(5)  The case analysis of N.S. Haroun, M.D., a state agency psychologist, who observed Plaintiff on March 9, 2007 and affirmed

15

the findings of Dr. Skopec with regard to Plaintiff's moderate limitations.  (AR 17, citing AR 287-288).

(6)  The November 2006 case analysis of Joel Ross, M.D., who opined that Plaintiff's physical impairment caused by the ingestion of Drano was expected to improve and to cause no limitations on physical work capabilities beyond April 2007.  (AR 17, citing AR 230).

(7)  The case analysis of Dr. A.W. Lizarraras, who confirmed Dr. Ross's assessments.  (AR 17, citing 289-290).

(8)  Plaintiff's own testimony and the testimony of his mother, Josephine Wilson, in determining Plaintiff's activities of daily living and social functioning.  (AR 13, 17).

The ALJ obtained and reviewed all the necessary medical records and there is no ambiguity in the record.  Thus, the ALJ was not required to obtain any additional information in order to fulfill his duty to fully and fairly develop the record.

C.  **The ALJ Did Not Err By Relying On The Opinions Of Dr. Ross And Dr. Lizarraras**

Plaintiff contends that the ALJ improperly relied on the opinions of Dr. Joel Ross and Dr. A.W. Lizarraras, both non-examining state agency consultants.  Plaintiff argues that Dr. Ross and Dr. Lizarraras had not reviewed "'the vast majority of the entire medical evidence of

record' as is evident from their sketchy list of evidence in their worksheet reports." (Plaintiff's Memo. at 15).   Plaintiff asserts that neither Dr. Ross nor Dr. Lizarraras "gave any serious consideration to the content of the records" and that their opinions should not be relied upon.  (Id. at 16).   This Court disagrees.

First, as agency physicians, Dr. Ross and Dr. Lizarraras qualify as experts in social security disability evaluations.   20 C.F.R. § 416.927(f)(2)(I).  The regulations state that the ALJs "must consider" findings from an agency physician.  Id.  Social Security Ruling 96-6p also states that the findings of fact made by an agency physician "must be treated as expert opinion evidence" by the ALJ.   An ALJ "may not ignore these opinions."  See SSR 96-6p, 1996 WL 374180, *1.  Although Social Security Rulings do not have the force of law, they are binding on all components of the Social Security Administration and courts give them some deference.   See 20 C.F.R. § 402.35(b)(1); Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (holding that although Social Security Rulings that are issued by the Commissioner of Social Security to clarify implementing regulations and agency policies do not have the force of law, reviewing courts will give them some deference because they represent the Commissioner's interpretations of the agency's regulations, unless they are inconsistent with statutes or regulations).   Accordingly, the ALJ was required to consider the opinions of Dr. Ross and Dr. Lizarraras.

Secondly, a non-examining physician's opinion may serve as substantial evidence if it is not contradicted by other evidence. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citations

omitted).   Plaintiff has failed to demonstrate that the opinions of Dr. Ross and Dr. Lizarraras were contradicted by other evidence.   Plaintiff has not shown how other treating source opinions conflict with the opinions of Dr. Ross and Dr. Lizarraras, which conclude that Plaintiff's GI impairment was not severe.   Because there were no conflicting opinions, the ALJ was entitled to rely on the opinions of Dr. Ross and Dr. Lizarraras.   No remand is required for this claim.

**D.   Plaintiff's Contention That The ALJ's RFC Failed To Include The Limitation That Plaintiff Was Limited To One-And-Two-Step Instructions Is Without Merit**

Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's RFC. (Plaintiff's Memo. at 18).   Specifically, Plaintiff contends that the ALJ erred in failing to include a limitation to one-and-two-step instructions. (Plaintiff's Memo. at 18).   This Court disagrees.

RFC is defined as what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).   SSR 96-8p provides in relevant part: "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."   SSR 96-8p, 1996 WL 374184, at *1 (SSA July 2, 1996).   The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but had the following nonexertional limitations, i.e., that Plaintiff is limited to simple, repetitive work and should avoid concentrated exposure to hazards like unprotected

18

heights and dangerous machinery.  In making such a determination, the ALJ properly accounted for Plaintiff's nonexertional limitations, contrary to Plaintiff's contention.

Initially, Plaintiff misstates Dr. Yang's assessment concerning Plaintiff's ability to follow instructions.  A review of the record reveals that Dr. Yang merely states that Plaintiff is "able to follow 1- and 2- part instructions" (AR 229), not that Plaintiff is necessarily limited to following one-and-two-part instructions.  Dr. Yang's overall opinion does not suggest that he intended to limit Plaintiff to simple instructions.  Dr. Yang noted that Plaintiff can "adequately remember and complete [both] simple and complex tasks." (AR 229).  Dr. Yang also opined that Plaintiff could tolerate the stress inherent in a work environment, maintain regular attendance, work without supervision and interact appropriately with others.  (AR 229).  He noted that Plaintiff was cooperative and attentive, alert in all spheres, able to perform simple calculations and  spell simple words and his memory was intact.  (AR 228).  Plaintiff presented no obsessions or delusions and denied homicidal or suicidal ideation or hallucinations.  (AR 228).  Plaintiff reported to Dr. Yang that his medications were effective, that he attended twelve-step meetings, performed household chores, shopped, cooked, managed money, drove and played video games.  (AR 227-228).  Plaintiff misconstrues Dr. Yang's notation as to Plaintiff's ability to follow one-and-two-step instructions as an imposition of a limitation, but a review of Dr. Yang's entire opinion does not support Plaintiff's argument.

The ALJ's RFC finding is consistent with Dr. Yang's overall opinion. (AR 14, 229). Plaintiff is incorrect in assuming that the ALJ rejected any so-called "one-and-two-step instructions limitation." The ALJ did not specifically reject this limitation and in fact, properly considered it. (AR 16). The ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels but included the following non-exertional limitations, i.e., the ALJ limited Plaintiff to simple, repetitive work and found that Plaintiff should avoid concentrated exposure to hazards like unprotected heights and dangerous machinery. (AR 14). The ALJ limited Plaintiff to "simple, repetitive tasks." (AR 17). The ALJ's RFC properly takes into account Plaintiff's limitations caused by his schizoaffective condition and substance addiction disorder.   The ALJ properly considered the medical records and testimony of Plaintiff and his mother, which established that he is capable of daily activities consistent with the RFC.

Plaintiff argues extensively that had the ALJ included the one-and-two-step instructions "limitation," Plaintiff's RFC could not include the capacity to work in either of the "other work" occupations cited by the ALJ at step five, which include hand packer and small product assembler. (Plaintiff's Memo. at 19). Plaintiff argues that such jobs require the ability to function at Reasoning Level two. (Id.). Plaintiff alleges that including the limitation would reduce Plaintiff's ability to function at Reasoning Level one. (Plaintiff's Memo. at 19). Plaintiff alleges that according to the DOT, the jobs of hand packer and small product assembler both have a Reasoning Level of two, which is inconsistent with a limitation to one-and-two-step instructions. (Plaintiff's Memo. at 19). Reasoning Level two calls for a worker to

be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. (<u>Id.,</u> citing DOT Appendix C.).

As discussed, Dr. Yang's entire opinion did not indicate a limitation to one-and-two-step instructions.  Instead, read in context and with Dr. Yang's other observations, jobs which required a Reasoning Level Two could be performed by Plaintiff.

Assuming, arguendo, that Dr. Yang did limit Plaintiff to one-and-two-step instructions and further assuming that the ALJ rejected the limitation in error, any such error was harmless because inclusion of the limitation would not change the ALJ's RFC finding.  The ALJ did not make a specific determination as to whether Plaintiff is capable of performing work requiring a Reasoning Level of one or two, but his RFC assessment does imply that Plaintiff is capable of performing work requiring a Reasoning Level of at least two, which is consistent with the jobs of hand packer and small product assembler.  Plaintiff is incorrect in taking the word "detailed" in the DOT job description to automatically indicate that the jobs at issue are inconsistent with Dr. Yang's one-and-two-step instructions limitation and Plaintiff's RFC, which "limits [Plaintiff] to simple, repetitive tasks, i.e., unskilled work." (AR 17).  There was no deviation between the ALJ's conclusions and the DOT's job descriptions to be explained.

Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: 'short and simple instructions' and 'detailed' or 'complex' instructions.  The DOT, on the other

hand, employs a much more graduated, measured and finely tuned scale . . . To equate the Social Security regulations' use of the term 'simple' with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word 'detail.' . . . Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005) (citations omitted). Plaintiff's ability to follow one-and-two-step instructions, but also complete simple and complex tasks, indicates a level of reasoning sophistication above the most elementary of occupations found at Reasoning Level one. Id.; see also Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (Level two reasoning consistent with limitation to simple and repetitive tasks); Lara v. Astrue, 305 Fed. App'x 324, 326 (9th Cir. 2008) (someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication beyond Reasoning Level one). Thus, even assuming a one-and-two-step instructions limitation, the ALJ properly determined that this and Plaintiff's other limitations do not prevent him from performing work requiring a Reasoning Level two.

**E.   The ALJ Satisfied His Duty To Develop The Record**

Lastly, Plaintiff contends again that the ALJ did not fulfill his duty to develop the record because the hearing was over two years after the most recent medical opinions. (Plaintiff's Memo. at 26-27). This Court disagrees.

A review of the record reveals that Plaintiff's attorney never made a request to supplement the record or for additional consultative examinations. As Defendant points out, Plaintiff did not submit any additional evidence to the Appeals Council, even though he was represented by counsel. (Answer at 10, citing AR 1-35).

As already discussed, the ALJ's duty to augment the existing record was not triggered because the evidence was not ambiguous and the record was not inadequate. Tonapetyan, 242 F.3d at 1150. As established in Section VIII.B above, the agency fully developed the record. The ALJ properly considered several medical records from different sources; all consistently showed improvement in Plaintiff's impairments. Clearly, the ALJ obtained and reviewed several medical records and there is no ambiguity in this record. Thus, the ALJ did not have any duty to further develop the record by obtaining additional records.

//
//
//
//
//
//

# VIII.

## CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 1, 2010.

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[4] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."